5:20-mc-00004 (GTS/TWD)

Case 5:20-mc-00004-GTS-TWD    Document 7    Filed 01/30/20    Page 1 of 74
Case 3:19-cv-00196-KC    Document 124    Filed 12/17/19    Page 1 of 30

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION



| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | § |
| **and STATE OF OHIO ex rel.** | § |
| **ATTORNEY GENERAL DAVE** | § |
| **YOST,** | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| **EDUCARE CENTRE SERVICES,** | § |
| **INC., et al.,** | § |
| | § |
| Defendant. | § |

**EP-19-CV-196-KC**

## PRELIMINARY INJUNCTION ORDER AS TO DEFENDANTS PROLINK VISION, S.R.L., 9896988 CANADA, INC., SAM MADI, MOHAMMAD SOUHEIL AND CHARLES KHAROUF

On July 18, 2019, the Federal Trade Commission ("FTC") and the State of Ohio

("Plaintiffs") filed their Complaint for Permanent Injunction and Other Equitable Relief pursuant

to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the

Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15

U.S.C. §§ 6101-6108, the Ohio Consumer Sales Practices Act ("CSPA"), O.R.C. 1345.07, and

the Ohio Telephone Solicitation Sales Act ("TSSA"), O.R.C. 4719.01 et seq., ECF No. 1, and

moved, pursuant to Federal Rule of Civil Procedure 65(b), for a temporary restraining order,

asset freeze, appointment of a temporary receiver, other equitable relief, and an order to show

cause why a preliminary injunction should not issue against Educare Centre Services, Inc.,

A true copy of the original, I certify,
Clerk, U.S. District Court
By_____
Deputy

Tripletel, Inc., Prolink Vision, S.R.L., Sam Madi, Mohammad Souheil, Wissam Abedel Jalil,

Charles Kharouf, and relief defendant 9896988 Canada, Inc.  ECF No. 7.

On July 19, 2019, the Court issued a Temporary Restraining Order with an asset freeze

against the defendants and appointed a temporary receiver over Educare Centre Services, Inc.,

Tripletel, Inc., Prolink Vision, S.R.L., and 9896988 Canada, Inc.  ECF No. 8.

On July 30, 2019, the Court entered a Preliminary Injunction against Educare Centre

Services, Inc., Tripletel, Inc., and Wissam Abedel Jalil with an asset freeze against Educare

Centre Services, Inc., Tripletel, Inc., and Wissam Abedel Jalil and appointed a receiver over

Educare Centre Services, Inc., and Tripletel, Inc.  ECF No. 25.

On December 3, 2019, Plaintiffs filed their First Amended Complaint for Permanent

Injunction and Other Equitable Relief ("First Amended Complaint") pursuant to Section 13(b) of

the FTC Act, 15 U.S.C. § 53(b), and the Telemarketing Act, 15 U.S.C. §§ 6101-6108, the Ohio

CSPA, O.R.C. 1345.07, and the Ohio TSSA, O.R.C. 4719.01 et seq., (Doc. 81), adding 9896988

Canada, Inc. as a merits defendant.  ECF No. 81.

### FINDINGS OF FACT

The Court, having considered the Complaint, the First Amended Complaint, declarations,

exhibits, and the memorandum of points and authorities filed in support thereof, and being

otherwise advised, finds that:

A.      This Court has jurisdiction over the subject matter of this case, and there is good cause to

believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.      Plaintiffs have sufficiently demonstrated that defendants Prolink Vision, S.R.L., 9896988

Canada, Inc., Sam Madi, Mohammad Souheil, and Charles Kharouf ("CCIRR Defendants") have

engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act,

2

15 U.S.C. § 5(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the CSPA, and the TSSA, and that the FTC and the State of Ohio are therefore likely to prevail on the merits of this action.

C.     Among other things, Plaintiffs have demonstrated that the CCIRR Defendants are engaged in an unlawful telemarketing scheme that markets a credit card interest rate reduction ("CCIRR") service.  They deliver unauthorized pre-recorded telephone messages ("robocalls") to consumers in violation of the TSR.  The CCIRR Defendants also violate the TSR by using remotely created payment orders or remotely created checks ("RCPOs") as payment for goods or services they offer or sell to consumers through telemarketing and by assisting and facilitating the CCIRR Defendants' unlawful telemarketing scheme.  The TSR explicitly prohibits (1) the use of RCPOs in any type of telemarketing transactions, and (2) any person from providing substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates Sections 310.3(a), (c) or (d) or Section 310.4 of the TSR.  16 C.F.R. §§ 310.4(a)(9) and 310.3(b).

D.     The CCIRR Defendants' telemarketing scheme has generated more than $7.5 million in RCPO payments from consumers since June 13, 2016, the date when the TSR prohibition on the use of RCPOs in telemarketing transactions went into effect.

E.     Plaintiffs have sufficiently demonstrated that immediate and irreparable harm will result from the CCIRR Defendants' ongoing violations of Section 5 of the FTC Act, the TSR, and the Ohio CSPA and TSSA unless Defendants are restrained and enjoined by Order of this Court.

F.     Good cause exists for appointing a receiver over the Receivership Entities, freezing the CCIRR Defendants' assets, permitting the Receiver immediate access to Defendants' business

premises to obtain and take control of Defendants' business records wherever the records are stored, and permitting the Plaintiffs and the Receiver to take expedited discovery.

G.      Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, a preliminary injunction order with an asset freeze, the appointment of a receiver, access to the CCIRR Defendants' business premises and records, expedited discovery, and other equitable relief is in the public interest.

H.      This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

I.      No security is required of any agency of the United States for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

J.      The Court will issue a separate order addressing the issues raised by Defendants related to the Court's authority to enter this Preliminary Injunction.

**DEFINITIONS**

For the purpose of this Order, the following definitions shall apply:

A.      "CCIRR Defendants" means Prolink Vision, S.R.L. and 9896988 Canada, Inc., and each of their subsidiaries, affiliates, successors, and assigns, and Sam Madi, Mohammad Souheil, and Charles Kharouf, individually, collectively, or in any combination.

B.      "Corporate Defendants" means Prolink Vision, S.R.L. and 9896988 Canada, Inc., and each of their subsidiaries, affiliates, successors, and assigns.

C.      "Debt Relief Product or Service" means any product, service, plan, or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation between a consumer and one or more creditors

4

or debt collectors, including a reduction in the balance, interest rate, or fees owed by a consumer
to a creditor or debt collector.

D.       "Document" is synonymous in meaning and equal in scope to the usage of "document"
and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P.
34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings,
images, Internet sites, web pages, websites, electronic correspondence, including e-mail and
instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs,
books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt
books, ledgers, personal and business canceled checks and check registers, bank statements,
appointment books, computer records, customer or sales databases and any other electronically
stored information, including Documents located on remote servers or cloud computing systems,
and other data or data compilations from which information can be obtained directly or, if
necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a
separate Document within the meaning of the term.

E.       "Electronic Data Host" means any Person in the business of storing, hosting, or otherwise
maintaining electronically stored information. This includes, but is not limited to, any entity
hosting a website or server, and any entity providing "cloud based" electronic storage.

F.       "Individual Defendants" means Sam Madi, Mohammad Souheil, and Charles Kharouf,
individually, collectively, or in any combination.

G.       "National Do Not Call Registry" means the registry of telephone numbers maintained by
the FTC, pursuant to Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), of
Persons who do not wish to receive Outbound Telephone Calls to induce the purchase of goods
or services.

H.      "Outbound Telephone Call" means a telephone call initiated by a Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

I.      "Person" means any natural person or any entity, corporation, partnership, or association of persons.

J.      "Remotely Created Payment Order" or "RCPO" means a payment instruction or order, whether created in electronic or paper format, drawn on a payor's account that is initiated or created by or on behalf of the payee, and which is deposited into or cleared through the check clearing system.  For purposes of this definition, an account includes any financial account or credit or other arrangement that allows checks, payment instructions, or orders to be drawn against it that are payable by, through, or at a bank.

K.      "Receiver" means the receiver appointed in Section XII of this Order and any deputy receivers that shall be named by the receiver.

L.      "Receivership Entities" means the Corporate Defendants, as well as any other entity that has conducted any business related to Defendants' credit card interest rate reduction services or products, including receipt of assets or funds derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

M.      "Seller" means any Person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration.

N.      "Telemarketer" means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

O.      "Telemarketing" means any plan, program, or campaign that is conducted to induce the

purchase of goods or services or a charitable contribution by use of one or more telephones.

## ORDER

### I.      DEBT RELIEF PRODUCT OR SERVICE BAN

IT IS THEREFORE ORDERED that the CCIRR Defendants, the CCIRR Defendants'

officers, agents, employees, and attorneys, and all other Persons in active concert or participation

with them, who receive actual notice of this Order by personal service or otherwise, whether

acting directly or indirectly, are restrained and enjoined from selling or marketing any Debt

Relief Product or Service, including any credit card interest rate reduction service.

### II.     PROHIBITED MISREPRESENTATIONS AND OMISSIONS

IT IS THEREFORE ORDERED that the CCIRR Defendants, the CCIRR Defendants'

officers, agents, employees, and attorneys, and all other Persons in active concert or participation

with them, who receive actual notice of this Order by personal service or otherwise, whether

acting directly or indirectly, in connection with the advertising, marketing, promoting, or

offering for sale of any goods or services, are restrained and enjoined from misrepresenting or

assisting others in misrepresenting, expressly or by implication, any material fact, including, but

not limited to:

A.      Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any

of the following:

1.      Any material aspect of the nature or terms of the seller's refund, cancellation,

exchange, or repurchase policies, or

7

2.      Any other fact material to consumers concerning any good or service, such as:

the total costs; any material restrictions, limitations or conditions; or any material aspect of its

performance, efficacy, nature, or central characteristics;

B.      Representing, or assisting others in representing, expressly or by implication, the

benefits, performance, or efficacy of any good or service, unless the representation is non-

misleading, and, at the time such representation is made, Defendants possess and rely upon

competent and reliable evidence to substantiate that the representation is true.

## III.    PROHIBITIONS ON VIOLATING THE TSR

**IT IS FURTHER ORDERED** that the CCIRR Defendants, the CCIRR Defendants'

officers, agents, employees, and attorneys, and all other Persons in active concert or participation

with them, who receive actual notice of this Order by personal service or otherwise, whether

acting directly or indirectly, in connection with Telemarketing of any product or service, are

restrained and enjoined from:

A.      Initiating, or causing others to initiate, an Outbound Telephone Call:

1.      That misrepresents, directly or by implication:

(a) The total costs to purchase, receive, or use, and the quantity of, any goods or

services that are the subject of a sales offer;

(b) Any material restriction, limitation, or condition to purchase, receive, or use

goods or services that are the subject of a sales offer;

(c) Any material aspect of the performance, efficacy, nature, or central

characteristics of goods or services that are the subject of a sales offer; or

(d) Any material aspect of the nature or terms of the seller's refund, cancellation,

exchange, or repurchase policies;

8

2.      To a Person whose telephone number is on the National Do Not Call Registry

without obtaining an express agreement, in writing, from the recipient of the outbound

telephone call that clearly evidences such Person's authorization to receive such calls

made by or on behalf of the specific party causing the call to be made;

3.      That delivers a prerecorded message when they have not obtained an express

agreement, in writing, from the recipient of the outbound telephone call that delivers a

prerecorded message;

4.      To a telephone number within a given area code when Defendants have not, either

directly or through another Person, paid the required annual fee for access to the

telephone numbers within that area code that are included on the National Do Not Call

Registry;

B.      Creating or causing to be created, directly or indirectly, a Remotely Created Payment

Order as payment for goods or services offered or sold through telemarketing; or

C.      Violating, or assisting others in violating, as defined by § 310.3(b) of the TSR, any

provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, attached as Attachment A.

## IV.    PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that the CCIRR Defendants, the CCIRR Defendants'

officers, agents, employees, and attorneys, and all other Persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly or indirectly,

are hereby restrained and enjoined from:

A.      Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth

date, telephone number, email address, credit card number, bank account number, Social

Security number, or other financial or identifying information of any person that any Defendant

obtained in connection with any activity that pertains to the subject matter of this Order; and

B.      Benefitting from or using the name, address, birth date, telephone number, email address,

credit card number, bank account number, Social Security number, or other financial or

identifying information of any person that any Defendant obtained in connection with any

activity that pertains to the subject matter of this Order. Provided, however, that Defendants may

disclose such identifying information to a law enforcement agency, to their attorneys as required

for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or

discovery in this action in the manner required by the Federal Rules of Civil Procedure and by

any protective order in the case.

## V.      ASSET FREEZE

**IT IS FURTHER ORDERED** that the CCIRR Defendants, the CCIRR Defendants'

officers, agents, employees, and attorneys, and all other Persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly or indirectly,

are hereby restrained and enjoined from:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling,

concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a

lien or security interest or other interest in, or otherwise disposing of any assets that are:

1.      owned or controlled, directly or indirectly, by any Defendant;

2.      held, in part or in whole, for the benefit of any Defendant;

3.      in the actual or constructive possession of any Defendant; or

4.    owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B.    Opening or causing to be opened any safe deposit boxes, commercial mailboxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.    Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager.  This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

D.    Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

The assets covered by this Section shall include:  (1) all assets of the CCIRR Defendants as of July 19, 2019; and (2) assets obtained by the CCIRR Defendants after July 19, 2019, if those assets are derived from any activity that is the subject of the First Amended Complaint in this matter or that is prohibited by this Order.  This Section does not prohibit any transfer of assets to the Receiver or repatriation of assets specifically required by this Order.

## VI.    DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, Payment Processor, merchant bank, acquiring bank,

independent sales organization, third party processor, payment gateway, insurance company, business entity, or Person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any asset that has been owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Defendant, including through a credit card account, shall:

A.      Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or asset, as well as all Documents or other property related to such assets, except by further order of this Court; provided, however, that this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B.      Deny any Person, except the Receiver, access to any safe deposit box, commercial

mailbox, or storage facility that is titled in the name of any Defendant, either individually or

jointly, or otherwise subject to access by any Defendant;

C.      Provide Plaintiffs' counsel and the Receiver, within three (3) days of receiving a copy of

this Order, a sworn statement setting forth, for each asset or account covered by this Section:

      1.      The identification number of each such account or asset;

      2.      The balance of each such account, or a description of the nature and value of each

      such asset as of the close of business on the day on which this Order is served, and, if the

      account or other asset has been closed or removed, the date closed or removed, the total

      funds removed in order to close the account, and the name of the Person whom such

      account or other asset was remitted; and

      3.      The identification of any safe deposit box, commercial mailbox, or storage facility

      that is either titled in the name, individually or jointly, of any Defendant, or is otherwise

      subject to access by any Defendant; and

D.      Upon the request of Plaintiffs' counsel or the Receiver, promptly provide Plaintiffs'

counsel and the Receiver with copies of all records or other Documents pertaining to any account

covered by this Section or asset, including originals or copies of account applications, account

statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts,

including wire transfers and wire transfer instructions, all other debit and credit instruments or

slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit

boxes, commercial mail boxes, and storage facilities.

      This Section does not prohibit any transfer of assets to the Receiver or repatriation of

assets specifically required by this Order.

## VII.   FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, within fourteen (14) days of service of this Order upon them, if they have not done so already in compliance with the TRO previously issued in this matter, shall prepare and deliver to Plaintiffs' counsel and the Receiver:

A.     Completed financial statements on the forms attached to this Order as Attachment B (Financial Statement of Individual Defendant) for each Individual Defendant, and Attachment C (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.     Completed Attachment D (IRS Form 4506, Request for Copy of a Tax Return) for each Defendant.

## VIII.   FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within fourteen (14) days following the service of this Order, if they have not done so already in compliance with the TRO previously issued in this matter, each Defendant shall:

A.     Provide Plaintiffs' counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all assets, Documents, and accounts outside of the United States which are:  (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.     Take all steps necessary to provide Plaintiffs' counsel and the Receiver access to all Documents and records that may be held by third parties located outside of the territorial United

14

States of America, including signing the Consent to Release of Financial Records appended to this Order as Attachment E.

C.      Transfer to the territory of the United States any and all Documents and assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.      The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiffs of the name and location of the financial institution or other entity that is the recipient of such Documents or assets; and (2) serve this Order on any such financial institution or other entity.

## IX.    NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that the CCIRR Defendants, the CCIRR Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A.      Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' assets have been fully repatriated pursuant to this Order; or

15

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' assets have been fully repatriated pursuant to this Order.

## X.    CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiffs may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiffs.

## XI.    PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that the CCIRR Defendants, the CCIRR Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

A.      Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' assets.

## XII.    REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that the CCIRR Defendants, the CCIRR Defendants'

officers, agents, employees, and attorneys, and all other Persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly or indirectly,

are hereby restrained and enjoined from creating, operating, or exercising any control over any

business entity, whether newly formed or previously inactive, including any partnership, limited

partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiffs'

counsel and the Receiver with a written statement disclosing:  (1) the name of the business

entity; (2) the address and telephone number of the business entity; (3) the names of the business

entity's officers, directors, principals, managers, and employees; and (4) a detailed description of

the business entity's intended activities.

## XIII.   APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is appointed as

Receiver of the Receivership Entities with full powers of an equity receiver.  The Receiver shall

be solely the agent of this Court in acting as Receiver under this Order.

## XIV.   DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to

accomplish the following:

A.       Assume full control of Receivership Entities by removing, as the Receiver deems

necessary or advisable, any director, officer, independent contractor, employee, attorney, or

agent of any Receivership Entity from control of, management of, or participation in, the affairs

of the Receivership Entity;

17

B.      Take exclusive custody, control, and possession of all assets and Documents of, or in the

possession, custody, or under the control of, any Receivership Entity, wherever situated;

C.      Take exclusive custody, control, and possession of all Documents or assets associated

with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated,

including reserve funds held by payment processors, credit card processors, merchant banks,

acquiring banks, independent sales organizations, third party processors, payment gateways,

insurance companies, or other entities;

D.      Conserve, hold, manage, and prevent the loss of all assets of the Receivership Entities,

and perform all acts necessary or advisable to preserve the value of those assets.  The Receiver

shall assume control over the income and profits therefrom and all sums of money now or

hereafter due or owing to the Receivership Entities.  The Receiver shall have full power to sue

for, collect, and receive, all assets of the Receivership Entities and of other Persons whose

interests are now under the direction, possession, custody, or control of, the Receivership

Entities.  Provided, however, that the Receiver shall not attempt to collect any amount from a

consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted

from the deceptive acts or practices or other violations of law alleged in the Complaint in this

matter, without prior Court approval;

E.      Obtain, conserve, hold, manage, and prevent the loss of all Documents of the

Receivership Entities, and perform all acts necessary or advisable to preserve such Documents.

The Receiver shall:  divert mail; preserve all Documents of the Receivership Entities that are

accessible via electronic means (such as online access to financial accounts and access to

electronic Documents held onsite or by Electronic Data Hosts, by changing usernames,

passwords or other log-in credentials); take possession of all electronic Documents of the

Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all

such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of

obtaining electronic Documents stored onsite or remotely.

F.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent

contractors and technical specialists, as the Receiver deems advisable or necessary in the

performance of duties and responsibilities under the authority granted by this Order;

G.     Make payments and disbursements from the receivership estate that are necessary or

advisable for carrying out the directions of, or exercising the authority granted by, this Order,

and to incur, or authorize the making of, such agreements as may be necessary and advisable in

discharging his or her duties as Receiver.  The Receiver shall apply to the Court for prior

approval of any payment of any debt or obligation incurred by the Receivership Entities prior to

the date of entry of this Order, except payments that the Receiver deems necessary or advisable

to secure assets of the Receivership Entities, such as rental payments;

H.     Take all steps necessary to secure and take exclusive custody of each non-residential

location from which the Receivership Entities operate their businesses.  Such steps may include,

but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1)

securing the location by changing the locks and alarm codes and disconnecting any internet

access or other means of access to the computers, servers, internal networks, or other records

maintained at that location; and (2) requiring any persons present at the location to leave the

premises, to provide the Receiver with proof of identification, and/or to demonstrate to the

satisfaction of the Receiver that such persons are not removing from the premises Documents or

assets of the Receivership Entities.  Law enforcement personnel, including, but not limited to,

police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the

peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

I.      Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, including echeckprocessing.net, and to provide access to all such web page or websites to Plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives;

J.      Enter into and cancel contracts and purchase insurance as advisable or necessary;

K.      Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

L.      Make an accounting, as soon as practicable, of the assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

M.      Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

N.      Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

O.      Open one or more bank accounts at designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such designated

accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

P.      Maintain accurate records of all receipts and expenditures incurred as Receiver;

Q.      Allow the FTC's representatives, agents, and assistants, as well as the CCIRR Defendants' representatives and the CCIRR Defendants themselves, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy all books, records, Documents, accounts, and other assets owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access, and access by the FTC's representatives, agents, and assistants shall be allowed as soon as practicable;

R.      Allow the Plaintiffs' representatives, agents, and assistants, as well as the CCIRR Defendants and their representatives, reasonable access to all Documents in the possession, custody, or control of the Receivership Entities. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

S.      Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

T.      Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

U.      If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's

determination by filing a motion with the Court. Provided, however, that the Receiver may delay

providing such notice until the Receiver has established control of the nonparty entity and its

assets and records, if the Receiver determines that notice to the entity or the parties before the

Receiver establishes control over the entity may result in the destruction of records, dissipation

of assets, or any other obstruction of the Receiver's control of the entity; and

V.      If in the Receiver's judgment the business operations cannot be continued legally and

profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or

websites relating to the activities alleged in the Complaint cannot be accessed by the public, or

are modified for consumer education and/or informational purposes, and take all steps necessary

to ensure that any telephone numbers associated with the Receivership Entities cannot be

accessed by the public, or are answered solely to provide consumer education or information

regarding the status of operations.

## XV.   TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that the CCIRR Defendants and any other Person, with

possession, custody or control of property of, or records relating to, the Receivership Entities

shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist

the Receiver in taking and maintaining possession, custody, or control of the assets and

Documents of the Receivership Entities and immediately transfer or deliver to the Receiver

possession, custody, and control of, the following:

A.      All assets held by or for the benefit of the Receivership Entities;

B.      All Documents or assets associated with credits, debits, or charges made on behalf of any

Receivership Entity, wherever situated, including reserve funds held by payment processors,

22

credit card processors, merchant banks, acquiring banks, independent sales organizations, third

party processors, payment gateways, insurance companies, or other entities;

C.      All Documents of or pertaining to the Receivership Entities;

D.      All computers, electronic devices, mobile devices and machines used to conduct the

business of the Receivership Entities;

E.      All assets and Documents belonging to other Persons whose interests are under the

direction, possession, custody, or control of the Receivership Entities; and

F.      All keys, codes, user names and passwords necessary to gain or to secure access to any

assets or Documents of or pertaining to the Receivership Entities, including access to their

business premises, means of communication, accounts, computer systems (onsite and remote),

Electronic Data Hosts, or other property.

    In the event that any Person or entity fails to deliver or transfer any asset or Document, or

otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit

of Non-Compliance regarding the failure and a motion seeking compliance or a contempt

citation.

## XVI.   PROVISION OF INFORMATION TO RECEIVER

    **IT IS FURTHER ORDERED** that the CCIRR Defendants shall immediately provide to

the Receiver:

A.      A list of all assets and accounts of the Receivership Entities that are held in any name

other than the name of a Receivership Entity, or by any Person other than a Receivership Entity;

B.      A list of all agents, employees, officers, attorneys, servants and those Persons in active

concert and participation with the Receivership Entities, or who have been associated or done

business with the Receivership Entities; and

C.    A description of any Documents covered by attorney-client privilege or attorney work

product, including files where such Documents are likely to be located, authors or recipients of

such Documents, and search terms likely to identify such electronic Documents.

### XVII.  RECEIVER'S IMMEDIATE ACCESS TO RECEIVERSHIP DEFENDANTS' CORPORATE EMAILS AND OTHER ELECTRONICALLY STORED BUSINESS RECORDS

Google, Inc., and any other Electronic Data Host that hosts or provides Gmail email

services, Google Docs, or google drive or other ESI storage services for  Receivership Entities,

including email accounts for globextelecom.net or prolinkvision.com, such as

mike@globextelecom.net, mike@prolinkvision.com, and sally@globextelecom.net, are

immediately required to secure and preserve all Receivership Defendants' emails and other

electronically stored business records ("ESBR") and transfer or deliver control of the

Receivership Defendants' emails and ESBR and any user names and passwords relating to them,

to the Receiver or the Receiver's designee upon the Receiver's written request.  Furthermore, the

Receiver is allowed to request that FTC employees and agents to access, secure, copy, and

download such emails and ESBR.

### XVIII.  COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that the CCIRR Defendants; Receivership Entities; the

CCIRR Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all

other Persons in active concert or participation with any of them, and any other Person with

possession, custody, or control of property of or records relating to the Receivership entities who

receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This

cooperation and assistance shall include, but is not limited to, providing information to the

Receiver that the Receiver deems necessary to exercise the authority and discharge the

responsibilities of the Receiver under this Order; providing any keys, codes, user names and

passwords required to access any computers, electronic devices, mobile devices, and machines

(onsite or remotely) and any cloud account (including specific method to access account) or

electronic file in any medium; advising all Persons who owe money to any Receivership Entity

that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's

direction and producing records related to the assets and sales of the Receivership Entities.

### XIX.   NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that the CCIRR Defendants; Receivership Entities; the

CCIRR Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all

other Persons in active concert or participation with any of them, who receive actual notice of

this Order, and any other Person served with a copy of this Order, are hereby restrained and

enjoined from directly or indirectly:

A.      Interfering with the Receiver's efforts to manage, or take custody, control, or possession

of, the assets or Documents subject to the receivership;

B.      Transacting any of the business of the Receivership Entities;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating,

or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in

which an interest is held or claimed by, the Receivership Entities; or

D.      Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the

exercise of their duties or authority under any order of this Court.

### XX.   STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency

of the receivership ordered herein, the CCIRR Defendants, the CCIRR Defendants' officers,

agents, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other Persons seeking to establish or enforce any claim, right, or interest against or on behalf of the CCIRR Defendants, and all others acting for or on behalf of such Persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or Documents of the Receivership Entities, including, but not limited to:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.      Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.      Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay:  (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action

or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

### XXI.   COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

### XXII.      RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $10,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

### XXIII.      DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that the CCIRR Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, and provide Plaintiffs and the Receiver with a sworn statement

that this provision of the Order has been satisfied, which statement shall include the names,

physical addresses, phone number, and email addresses of each such Person who received a copy

of the Order.  Furthermore, the CCIRR Defendants shall not take any action that would

encourage officers, agents, members, directors, employees, salespersons, independent

contractors, attorneys, subsidiaries, affiliates, successors, assigns or other Persons in active

concert or participation with them to disregard this Order or believe that they are not bound by

its provisions.

### XXIV.    EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P.

26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiffs and

the Receiver are granted leave, at any time after service of this Order, to conduct limited

expedited discovery for the purpose of discovering:  (1) the nature, location, status, and extent of

the CCIRR Defendants' assets; (2) the nature, location, and extent of the CCIRR Defendants'

business transactions and operations; (3) Documents reflecting the CCIRR Defendants' business

transactions and operations; or (4) compliance with this Order.  The limited expedited discovery

set forth in this Section shall proceed as follows:

A.       Plaintiffs and the Receiver may take the deposition of parties and non-parties.

Reasonable notice shall be provided for such depositions.  The limitations and conditions set

forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding

subsequent depositions of an individual shall not apply to depositions taken pursuant to this

Section.  Any such deposition taken pursuant to this Section shall not be counted towards the

deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by

telephone or other remote electronic means;

B.      Plaintiffs and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within fourteen (14) days of service.

C.      Plaintiffs and the Receiver may serve upon parties interrogatories that require response within fourteen (14) days after Plaintiffs serves such interrogatories;

D.      The Plaintiffs and the Receiver may serve subpoenas upon non-parties that direct production or inspection within fourteen (14) days of service.

E.      Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F.      Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

G.      The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

XXV.      **SERVICE OF THIS ORDER**

**IT IS FURTHER ORDERED** that copies of this Order as well as the Motion for Permanent Injunction and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiffs, by any law enforcement agency, or by private process server, upon any Defendant, or any Person (including any financial institution) that may have possession, custody or control of any asset or Document

29

of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2)

of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch,

subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

### XXVI.    CORRESPONDENCE AND SERVICE ON PLAINTIFFS

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence

and service of pleadings on Plaintiffs shall be addressed to:

Christopher E. Brown
J. Ronald Brooke, Jr.
Federal Trade Commission
600 Pennsylvania Avenue, NW (CC-8528)
Washington, DC 20580
Fax:  202-326-3395
Email: cbrown3@ftc.gov; jbrooke@ftc.gov

Erin Leahy (Ohio Bar #69509)
Assistant Attorneys General
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
Email:
erin.leahy@OhioAttorneyGeneral.gov

### XXVII.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

all purposes.

**SO ORDERED.**

**SIGNED** this 17th day of December, 2019.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

# ATTACHMENT A



# Electronic Code of Federal Regulations

## e-CFR data is current as of July 5, 2018

Home
gpo.gov
govinfo.gov

Browse / Search Previous

### e-CFR Navigation Aids
Browse
Simple Search

**Advanced Search**
— Boolean
— Proximity

Search History
Search Tips
Corrections
Latest Updates
User Info
FAQs
Agency List
Incorporation By Reference



### Related Resources
The Code of Federal Regulations (CFR) annual edition is the codification of the general and permanent rules published in the Federal Register by the departments and agencies of the Federal Government produced by the Office of the Federal Register (OFR) and the Government Publishing Office.

Download the Code of Federal Regulations in XML.

Download the Electronic Code of Federal Regulations in XML.

Monthly Title and Part user viewing data for the e-CFR is available for download in CSV format.

Parallel Table of Authorities and Rules for the Code of Federal Regulations and the United States Code
Text | PDF

Find, review, and submit comments on Federal rules that are open for comment and published in the Federal Register using Regulations.gov.

Purchase individual CFR titles from the U.S. Government Online Bookstore.

Find issues of the CFR (including issues prior to 1996) at a local Federal depository library.

[A2]

Title 16 → Chapter I → Subchapter C → Part 310

Browse Previous | Browse Next

Title 16: Commercial Practices

---

PART 310—TELEMARKETING SALES RULE 16 CFR PART 310

**Contents**
§310.1   Scope of regulations in this part.
§310.2   Definitions.
§310.3   Deceptive telemarketing acts or practices.
§310.4   Abusive telemarketing acts or practices.
§310.5   Recordkeeping requirements.
§310.6   Exemptions.
§310.7   Actions by states and private persons.
§310.8   Fee for access to the National Do Not Call Registry.
§310.9   Severability.

AUTHORITY: 15 U.S.C. 6101-6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

⬆ Back to Top

### §310.1   Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

⬆ Back to Top

### §310.2   Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Cash-to-cash money transfer* means the electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) transfer of the value of cash received from one person to another person in a different location that is sent by a money transfer provider and received in the form of cash. For purposes of this definition,

*money transfer provider* means any person or financial institution that provides cash-to-cash money transfers for a person in the normal course of its business, whether or not the person holds an account with such person or financial institution. The term *cash-to-cash money transfer* includes a remittance transfer, as defined in section 919(g)(2) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. 1693a, that is a cash-to-cash transaction; however it does not include any transaction that is:

(1) An electronic fund transfer as defined in section 903 of the EFTA;

(2) Covered by Regulation E, 12 CFR 1005.20, pertaining to gift cards; or

(3) Subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*

(g) *Cash reload mechanism* is a device, authorization code, personal identification number, or other security measure that makes it possible for a person to convert cash into an electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) form that can be used to add funds to a general-use prepaid card, as defined in Regulation E, 12 CFR 1005.2, or an account with a payment intermediary. For purposes of this definition, a cash reload mechanism is not itself a general-use prepaid debit card or a swipe reload process or similar method in which funds are added directly onto a person's own general-use prepaid card or account with a payment intermediary.

(h) *Charitable contribution* means any donation or gift of money or any other thing of value.

(i) *Commission* means the Federal Trade Commission.

(j) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(k) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(l) *Credit card sales draft* means any record or evidence of a credit card transaction.

(m) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(n) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(o) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(p) *Donor* means any person solicited to make a charitable contribution.

(q) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(r) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(s) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(t) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(u) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(v) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(w) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(x) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(y) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(z) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(aa) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

eCFR — Code of Federal Regulations    Case 3:19-cv-00196-KC    Document 124-1    Filed 12/17/19    Page 4 of 45

(bb) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(cc) *Remotely created payment order* means any payment instruction or order drawn on a person's account that is created by the payee or the payee's agent and deposited into or cleared through the check clearing system. The term includes, without limitation, a "remotely created check," as defined in Regulation CC, Availability of Funds and Collection of Checks, 12 CFR 229.2(fff), but does not include a payment order cleared through an Automated Clearinghouse (ACH) Network or subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 1026.

(dd) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(ee) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(ff) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(gg) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(hh) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77557, Dec. 14, 2015]

⬆ Back to Top

§310.3  Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay[659] for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In the case of debt relief services, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before the consumer enrolls in an offered program.

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[660]

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with §310.3(a)(1)(i) of this Rule.

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(i)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662] Such authorization shall be deemed verifiable if any of the following means is employed:

[661] Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq.*, and Regulation E, 12 CFR part 205.

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]

[663] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

eCFR — Code of Federal Regulations

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) An accurate description, clearly and conspicuously stated, of the goods or services or charitable contribution for which payment authorization is sought;

(B) The number of debits, charges, or payments (if more than one);

(C) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(D) The amount(s) of the debit(s), charge(s), or payment(s);

(E) The customer's or donor's name;

(F) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(G) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(H) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§310.3(a)(3)(ii)(A)-(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77558, Dec. 14, 2015]

⬆ Back to Top

### §310.4  Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or

telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(1) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(2) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in §310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(7)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(7)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

eCFR — Code of Federal Regulations

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(7)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(7)(ii)(A) of this section;

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours;

(9) Creating or causing to be created, directly or indirectly, a remotely created payment order as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing; or

(10) Accepting from a customer or donor, directly or indirectly, a cash-to-cash money transfer or cash reload mechanism as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with paragraph (b)(1)(iii)(A) of this section, including, but not limited to, harassing any person who makes such a request; hanging up on that person; failing to honor the request; requiring the person to listen to a sales pitch before accepting the request; assessing a charge or fee for honoring the request; requiring a person to call a different number to submit the request; and requiring the person to identify the seller making the call or on whose behalf the call is made;

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller or telemarketer:

(*1*) Can demonstrate that the seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[564] of that person; or

[564]For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(*2*) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[565] and

[565] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of,

or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(1) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to §310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating paragraph (b)(1)(ii) or (iii) of this section is the result of error and not of failure to obtain any information necessary to comply with a request pursuant to paragraph (b)(1)(iii)(A) of this section not to receive further calls by or on behalf of a seller or charitable organization.

(4) A seller or telemarketer will not be liable for violating §310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]; and

___

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[75 FR 48516, Aug. 10, 2010, as amended at 76 FR 58716, Sept. 22, 2011; 80 FR 77559, Dec. 14, 2015]

⬆ Back to Top

## §310.5 Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with §310.5(a)(3) of this Rule.

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by §310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by §310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with §310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

eCFR — Code of Federal Regulations

↥ Back to Top

## §310.6  Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by §310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR part 437, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving offers for goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1), for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) for any requested charitable contribution; *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business to induce the purchase of goods or services or a charitable contribution by the business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that §§310.4(b)(1)(iii)(B) and 310.5 shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77559, Dec. 14, 2015]

↥ Back to Top

## §310.7  Actions by states and private persons.

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

↥ Back to Top

## §310.8  Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under §310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $62 for each area code of data accessed, up to a maximum of $17,021; provided, however, that there shall be no charge to any person for accessing the first five area codes of data, and provided further, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. No person may participate in any arrangement to share the cost of accessing the National Do Not Call Registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in paragraph (c) of this section, each person excepted under paragraph (c) from paying the annual fee, and each person excepted from paying an annual fee under §310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $62 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $31 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

\* \* \* \* \*

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug. 24, 2010, as amended at 77 FR 51697, Aug. 27, 2012; 78 FR 53643, Aug. 30, 2013; 79 FR 51478, Aug. 29, 2014; 80 FR 77560, Dec. 14, 2016; 81 FR 59845, Aug. 31, 2016; 82 FR 39534, Aug. 21, 2017]

⬆ Back to Top


## §310.9  Severability.

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

⬆ Back to Top

Need assistance?

# ATTACHMENT B

## FEDERAL TRADE COMMISSION

### FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT

**Definitions and Instructions:**

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") in the first field only of any item that does not apply to you. If you cannot fully answer a question, explain why.

2. "Dependents" include your spouse, live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3. "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

4. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5. Type or print legibly.

6. Initial each page in the space provided in the lower right corner.

7. Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

    (1) "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

    (2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

    (3) "in any ( . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

### Item 1. Information About You

| Full Name | Social Security No. | |
|---|---|---|

| Current Address of Primary Residence | Driver's License No. | State Issued |
|---|---|---|
| | Phone Numbers<br>Home: (    )<br>Fax:  (    ) | Date of Birth:    /    /<br>(mm/dd/yyyy) |
| | | Place of Birth |

| ☐ Rent  ☐ Own      From (Date):    /    /<br>(mm/dd/yyyy) | E-Mail Address |
|---|---|
| Internet Home Page | |

#### Previous Addresses for past five years (if required; use additional pages at end of form)

| Address | From:    /    /<br>(mm/dd/yyyy)     Until:    /    /<br>(mm/dd/yyyy)<br><br>☐ Rent  ☐ Own |
|---|---|
| Address | From:    /    /          Until:    /    /<br><br>☐ Rent  ☐ Own |
| Address | From:    /    /          Until:    /    /<br><br>☐ Rent  ☐ Own |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

### Item 2. Information About Your Spouse or Live-In Companion

| Spouse/Companion's Name | Social Security No. | Date of Birth<br>/    /<br>(mm/dd/yyyy) |
|---|---|---|
| Address (if different from yours) | Phone Number<br>(    ) | Place of Birth |
| | ☐ Rent  ☐ Own       From (Date):    /    /<br>(mm/dd/yyyy) | |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

| Employer's Name and Address | Job Title |
|---|---|
| | Years in Present Job | Annual Gross Salary/Wages<br>$ |

### Item 3. Information About Your Previous Spouse

| Name and Address | Social Security No. |
|---|---|
| | Date of Birth<br>/    /<br>(mm/dd/yyyy) |

### Item 4. Contact Information (name and address of closest living relative other than your spouse)

| Name and Address | Phone Number<br>(    ) |
|---|---|

Initials: _____

## Item 5. Information About Dependents (whether or not they reside with you)

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |

## Item 6. Employment Information/Employment Income

Provide the following information for this year-to-date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self-employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, distributions, draws, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (e.g., health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| | From (Month/Year) / | To (Month/Year) / | Year 20 | Income $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year) / | To (Month/Year) / | Year 20 | Income $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year) / | To (Month/Year) / | Year 20 | Income $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |

Initials: _____

## Item 7.  Pending Lawsuits Filed By or Against You or Your Spouse

List all pending lawsuits that have been filed by or against you or your spouse in any court or before an administrative agency in the United States or in any foreign country or territory.  *Note:  At Item 12, list lawsuits that resulted in final judgments or settlements in your favor.  At Item 21, list lawsuits that resulted in final judgments or settlements against you.*

| Caption of Proceeding | Court or Agency and Location | Case No. | Nature of Proceeding | Relief Requested | Status or Disposition |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Item 8.  Safe Deposit Boxes

List all safe deposit boxes, located within the United States or in any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.

| Name of Owner(s) | Name & Address of Depository Institution | Box No. | Contents |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Initials: _____

## FINANCIAL INFORMATION

REMINDER: When an item asks for information regarding your assets and liabilities, include ALL assets and liabilities, regardless within the United States or elsewhere. Clearly identify potentially transferrable, whether held individually or jointly, and whether held, owned, or in custody by others for the benefit of you, your spouse, or any of your dependents or held by others for the benefit of you, your spouse, or any of your dependents. In all cases, provide all documents requested in Item 24 with your completed Financial Statement.

## ASSETS

### Item 9. Cash, Bank, and Money Market Accounts

List cash on hand (as opposed to cash in bank accounts or other financial accounts) and all bank accounts, money market accounts, or other financial accounts, including but not limited to checking accounts, savings accounts, and certificates of deposit. The term "cash on hand" includes but is not limited to cash in the form of currency, uncashed checks, and money orders.

| a. Amount of Cash on Hand $ | | Form of Cash on Hand | |
|---|---|---|---|
| b.  Name on Account | Name & Address of Financial Institution | Account No. | Current Balance |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

### Item 10. Publicly Traded Securities

List all publicly traded securities, including but not limited to, stocks, stock options, corporate bonds, mutual funds, U.S. government securities (including but not limited to treasury bills and treasury notes), and state and municipal bonds. Also list any U.S. savings bonds.

| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
|---|---|---|---|---|
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |

Initials: _____

## Item 11. Non-Public Business and Financial Interests
List all non-public business and financial interests, including but not limited to any interest in a non-public corporation, subchapter-S corporation, limited liability corporation ("LLC"), general or limited partnership, joint venture, sole proprietorship, international business corporation or personal investment corporation, and oil or mineral lease.

| Entity's Name & Address | Type of Business or Financial Interest (e.g., LLC, partnership) | Owner (e.g., self, spouse) | Ownership % | If Officer, Director, Member or Partner, Exact Title |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## Item 12. Amounts Owed to You, Your Spouse, or Your Dependents

| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|---|---|---|---|
|  | Current Amount Owed $ | Payment Schedule |  |
| Debtor's Telephone | Debtor's Relationship to You |  |  |
| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|  | Current Amount Owed $ | Payment Schedule |  |
| Debtor's Telephone | Debtor's Relationship to You |  |  |

## Item 13. Life Insurance Policies
List all life insurance policies (including endowment policies) with any cash surrender value.

| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|---|---|---|---|
|  | Insured | Loans Against Policy $ | Surrender Value $ |
| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|  | Insured | Loans Against Policy $ | Surrender Value $ |

## Item 14. Deferred Income Arrangements
List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, other retirement accounts, and college savings plans (e.g., 529 Plans).

| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
|---|---|---|---|
|  | Date Established / / (mm/dd/yyyy) | Type of Plan | Surrender Value before Taxes and Penalties $ |
| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
|  | Date Established / / | Type of Plan | Surrender Value before Taxes and Penalties $ |

Initials: _____

## Item 15.  Pending Insurance Payments or Inheritances
List any pending insurance payments or inheritances owed to you.

| Type | Amount Expected | Date Expected  (mm/dd/yyyy) |
|---|---|---|
| | $ | /    / |
| | $ | /    / |
| | $ | /    / |

## Item 16.  Vehicles
List all cars, trucks, motorcycles, boats, airplanes, and other vehicles.

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

## Item 17.  Other Personal Property
List all other personal property not listed in Items 9-16 by category, whether held for personal use, investment or any other reason, including but not limited to coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property.

| Property  Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

Initials: _____

## Item 18. Real Property
List all real property interests (including any land contract)

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy) / / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy) / / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

## LIABILITIES

## Item 19. Credit Cards
List each credit card account held by you, your spouse, or your dependents, and any other credit cards that you, your spouse, or your dependents use, whether issued by a United States or foreign financial institution.

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

## Item 20. Taxes Payable
List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependents.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

Initials: _____

## Item 21. Other Amounts Owed by You, Your Spouse, or Your Dependents

List all other amounts, not listed elsewhere in this financial statement, owed by you, your spouse, or your dependents.

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) |
|---|---|
| | |
| | Lender/Creditor's Relationship to You |

| Date Liability Was Incurred / / (mm/dd/yyyy) | Original Amount Owed $ | Current Amount Owed $ | Payment Schedule |
|---|---|---|---|

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) |
|---|---|
| | |
| | Lender/Creditor's Relationship to You |

| Date Liability Was Incurred / / (mm/dd/yyyy) | Original Amount Owed $ | Current Amount Owed $ | Payment Schedule |
|---|---|---|---|

## OTHER FINANCIAL INFORMATION

## Item 22. Trusts and Escrows

List all funds and other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents. Include any legal retainers being held on your behalf by legal counsel. Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity.

| Trustee or Escrow Agent's Name & Address | Date Established (mm/dd/yyyy) | Grantor | Beneficiaries | Present Market Value of Assets* |
|---|---|---|---|---|
| | / / | | | $ |
| | / / | | | $ |
| | / / | | | $ |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

## Item 23. Transfers of Assets

List each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties). For each such person or entity, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value* | Transfer Date (mm/dd/yyyy) | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | / / | |
| | | $ | / / | |
| | | $ | / / | |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

Initials: _____

## Item 24. Document Requests
Provide copies of the following documents with your completed Financial Statement.

|  | Federal tax returns filed during the last three years by or on behalf of you, your spouse, or your dependents. |
|---|---|
|  | All applications for bank loans or other extensions of credit (other than credit cards) that you, your spouse, or your dependents have submitted within the last two years, including by obtaining copies from lenders if necessary. |
| Item 9 | For each bank account listed in Item 9, all account statements for the past 3 years. |
| Item 11 | For each business entity listed in Item 11, provide (including by causing to be generated from accounting records) the most recent balance sheet, tax return, annual income statement, the most recent year-to-date income statement, and all general ledger files from account records. |
| Item 17 | All appraisals that have been prepared for any property listed in Item 17, including appraisals done for insurance purposes. You may exclude any category of property where the total appraised value of all property in that category is less than $2,000. |
| Item 18 | All appraisals that have been prepared for real property listed in Item 18. |
| Item 21 | Documentation for all debts listed in Item 21. |
| Item 22 | All executed documents for any trust or escrow listed in Item 22. Also provide any appraisals, including insurance appraisals that have been done for any assets held by any such trust or in any such escrow. |

## SUMMARY FINANCIAL SCHEDULES

### Item 25. Combined Balance Sheet for You, Your Spouse, and Your Dependents

| Assets | | Liabilities | |
|---|---|---|---|
| Cash on Hand (Item 9) | $ | Loans Against Publicly Traded Securities (Item 10) | $ |
| Funds Held in Financial Institutions (Item 9) | $ | Vehicles - Liens (Item 16) | $ |
| U.S. Government Securities (Item 10) | $ | Real Property – Encumbrances (Item 18) | $ |
| Publicly Traded Securities (Item 10) | $ | Credit Cards (Item 19) | $ |
| Non-Public Business and Financial Interests (Item 11) | $ | Taxes Payable (Item 20) | $ |
| Amounts Owed to You (Item 12) | $ | Amounts Owed by You (Item 21) | $ |
| Life Insurance Policies (Item 13) | $ | **Other Liabilities (Itemize)** | |
| Deferred Income Arrangements (Item 14) | $ | | |
| Vehicles (Item 16) | $ | | $ |
| Other Personal Property (Item 17) | $ | | $ |
| Real Property (Item 18) | $ | | $ |
| **Other Assets (Itemize)** | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| **Total Assets** | $ | **Total Liabilities** | $ |

### Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents
Provide the current monthly income and expenses for you, your spouse, and your dependents. Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| Income (State source of each item) | | Expenses | |
|---|---|---|---|
| Salary - After Taxes<br>Source: | $ | Mortgage or Rental Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties<br>Source: | $ | Property Taxes for Residence(s) | $ |
| Interest<br>Source: | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains<br>Source: | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income<br>Source: | $ | Food Expenses | $ |
| Profits from Sole Proprietorships<br>Source: | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S-Corporations, and LLCs<br>Source: | $ | Utilities | $ |

Initials: _____

| Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents (cont.) | | | | |
|---|---|---|---|---|
| Distributions from Trusts and Estates Source: | $ | | Medical Expenses, including Insurance | $ |
| Distributions from Deferred Income Arrangements Source: | $ | | Other Insurance Premiums | $ |
| Social Security Payments | $ | | Other Transportation Expenses | $ |
| Alimony/Child Support Received | $ | | Other Expenses (Itemize) | |
| Gambling Income | $ | | | |
| Other Income (Itemize) | | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | | | | $ |
| Total Income | $ | | Total Expenses | $ |

## ATTACHMENTS

### Item 27. Documents Attached to this Financial Statement
List all documents that are being submitted with this financial statement. For any Item 24 documents that are not attached, explain why.

| Item No. Document Relates To | Description of Document |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____
(Date)

_____
Signature

# ATTACHMENT C

# FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF CORPORATE DEFENDANT

**Instructions:**

1.  Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2.  The font size within each field will adjust automatically as you type to accommodate longer responses.

3.  In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

4.  When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

5.  Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number being continued.

6.  Type or print legibly.

7.  An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

**Item 1.**    **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

E-Mail Address _____ Internet Home Page _____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address _____ From/Until _____

Address _____ From/Until _____

Address _____ From/Until _____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

**Item 2.**    **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status: Active _____ Inactive _____ Dissolved _____

If Dissolved: Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

**Item 3.**    **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

**Item 4.**        **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

| Name & Address | % Owned |
|---|---|
| | |
| | |
| | |
| | |

**Item 5.**        **Board Members**

List all members of the corporation's Board of Directors.

| Name & Address | % Owned | Term (From/Until) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**Item 6.**        **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

| Name & Address | % Owned |
|---|---|
| | |
| | |
| | |
| | |
| | |

Initials _____

**Item 7.**         **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

| Name & Address | Business Activities | % Owned |
| --- | --- | --- |
| | | |
| | | |
| | | |

State which of these businesses, if any, has ever transacted business with the corporation _____

_____

**Item 8.**         **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

| Individual's Name | Business Name & Address | Business Activities | % Owned |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |

State which of these businesses, if any, have ever transacted business with the corporation _____

_____

**Item 9.**         **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date. A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

| Name and Address | Relationship | Business Activities |
| --- | --- | --- |
| | | |
| | | |
| | | |

Page  4                                                                    Initials _____

Item 10.        Outside Accountants

List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|------|-----------|---------|---------|
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |

Item 11.        Corporation's Recordkeeping

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|-----------------------------------|------------------|
|                                   |                  |
|                                   |                  |
|                                   |                  |
|                                   |                  |

Item 12.        Attorneys

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|------|-----------|---------|
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |

Initials _____

**Item 13.**     **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Page  6                                                                Initials _____

<u>Item 14.</u>        **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Page 7                                                                    Initials_____

Item 15.        Bankruptcy Information

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____


Item 16.        Safe Deposit Boxes

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation. *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |


## FINANCIAL INFORMATION

**REMINDER:  When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

Item 17.        Tax Returns

List all federal and state corporate tax returns filed for the last three complete fiscal years. *Attach copies of all returns.*

| Federal/ State/Both | Tax Year | Tax Due Federal | Tax Paid Federal | Tax Due State | Tax Paid State | Preparer's Name |
|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | |
| | | $ | $ | $ | $ | |
| | | $ | $ | $ | $ | |


Initials _____

**Item 18.**        **Financial Statements**

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|---------------|-------------------------|---------------------|---------------------------|----------|
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |

**Item 19.**        **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 18 above, provide the following summary financial information.

| | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|--|----------------------|------------|-------------|-------------|
| Gross Revenue | $ | $ | $ | $ |
| Expenses | $ | $ | $ | $ |
| Net Profit After Taxes | $ | $ | $ | $ |
| Payables | $ | | | |
| Receivables | $ | | | |

**Item 20.**        **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____ Cash Held for the Corporation's Benefit $_____

| Name & Address of Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|------------------------------------------|------------------------|-------------|-----------------|
|                                          |                        |             | $ |
|                                          |                        |             | $ |
|                                          |                        |             | $ |
|                                          |                        |             | $ |

Page 9                                                                Initials _____

**Item 21.**       **Government Obligations and Publicly Traded Securities**

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation. Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

**Item 22.**       **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Initials _____

**Item 23.**        **Other Assets**

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**Item 24.**        **Trusts and Escrows**

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Initials _____

**Item 25.**        **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____


**Item 26.**        **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Initials _____

<u>Item 27.</u>        **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

<u>Item 28.</u>        **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| <u>Name of Credit Card or Store</u> | <u>Names of Authorized Users and Positions Held</u> |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

<u>Item 29.</u>        **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| <u>Name/Position</u> | <u>Current Fiscal Year-to-Date</u> | <u>1 Year Ago</u> | <u>2 Years Ago</u> | <u>Compensation or Type of Benefits</u> |
|---|---|---|---|---|
|  | $ | $ | $ |  |
|  | $ | $ | $ |  |
|  | $ | $ | $ |  |
|  | $ | $ | $ |  |
|  | $ | $ | $ |  |

Page 13                                                    Initials _____

<u>Item 30.</u>        **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

<u>Item 31.</u>        **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (*e.g.*, Loan, Gift) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

Page  14

Initials _____

<u>Item 32.</u>        **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

| <u>Item No. Document Relates To</u> | <u>Description of Document</u> |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

        I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____                    _____
(Date)                                      Signature


                                            _____
                                            Corporate Position

Form **4506**

(July 2017)

Department of the Treasury
Internal Revenue Service

# Request for Copy of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506, visit *www.irs.gov/form4506.*

OMB No. 1545-0429

**Tip.** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a **Tax Return Transcript** for many returns free of charge. The transcript provides most of the line entries from the original tax return and usually contains the information that a third party (such as a mortgage company) requires. See Form 4506-T, Request for Transcript of Tax Return, or you can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

| 1a  Name shown on tax return. If a joint return, enter the name shown first. | 1b  First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
|---|---|
| **2a**  If a joint return, enter spouse's name shown on tax return. | **2b**  Second social security number or individual taxpayer identification number if joint tax return |

**3**  Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4**  Previous address shown on the last return filed if different from line 3 (see instructions)

**5**  If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution:** If the tax return is being mailed to a third party, ensure that you have filled in lines 6 and 7 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax return to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your return information, you can specify this limitation in your written agreement with the third party.

**6**  Tax return requested. Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶ _____

**Note:** If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . . . . . . . . . ☐

**7**  Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than eight years or periods, you must attach another Form 4506.

**8**  Fee. There is a $50 fee for each return requested. **Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.**

**a**  Cost for each return . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   $  **50.00**

**b**  Number of returns requested on line 7 . . . . . . . . . . . . . . . . . . . . . .

**c**  Total cost. Multiply line 8a by line 8b . . . . . . . . . . . . . . . . . . . . . .   $

**9**  If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . ☐

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☐  **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506.** See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

Signature (see instructions)                                        Date

Title (if line 1a above is a corporation, partnership, estate, or trust)

Spouse's signature                                                 Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 41721E          Form **4506** (Rev. 7-2017)

Form 4506 (Rev. 7-2017)

Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506 and its instructions, go to *www.irs.gov/form4506.* Information about any recent developments affecting Form 4506, Form 4506-T and Form 4506T-EZ will be posted on that page.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate (on line 5) a third party to receive the tax return.

**How long will it take?** It may take up to 75 calendar days for us to process your request.

**Tip.** Use Form 4506-T, Request for Transcript of Tax Return, to request tax return transcripts, tax account information, W-2 information, 1099 information, verification of nonfiling, and records of account.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual returns (Form 1040 series) and one for all other returns.

If you are requesting a return for more than one year or period and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual returns (Form 1040 series)

| If you filed an individual return and lived in: | Mail to: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 P-6 Kansas City, MO 64999 |

## Chart for all other returns

| If you lived in or your business was in: | Mail to: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | Internal Revenue Service RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 |

## Specific Instructions

**Line 1b.** Enter your employer identification number (EIN) if you are requesting a copy of a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, please include it on this line 3.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506 within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.

 *You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

**Individuals.** Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506 but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5. Form 2848 showing the delegation must be attached to Form 4506.

### Privacy Act and Paperwork Reduction Act Notice.

We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. If you request a copy of a tax return, sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224.

Do not send the form to this address. Instead, see *Where to file* on this page.

# ATTACHMENT E

## CONSENT TO RELEASE FINANCIAL RECORDS

I,_____ of_____ , (City,
State), do hereby direct any bank, saving and loan association, credit union,
depository institution, finance company, commercial lending company, credit card
processor, credit card processing entity, automated clearing house, network
transaction processor, bank debit processing entity, automated clearing house,
network transaction processor, bank debit processing entity, brokerage house,
escrow agent, money market or mutual fund, title company, commodity trading
company, trustee, or person that holds, controls, or maintains custody of assets,
wherever located, that are owned or controlled by me or at which there is an
account of any kind upon which I am authorized to draw, and its officers,
employees, and agents, to disclose all information and deliver copies of all
documents of every nature in its possession or control which relate to the said
accounts to any attorney of the Federal Trade Commission, and to give evidence
relevant thereto, in the matter of *FTC v. Educare Centre Services, Inc., et al.,* Civ.
No. 3:19-cv-196-KC now pending in the United States District Court of the
Western District of Texas, and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the
United States of America which restrict or prohibit disclosure of bank or other
financial information without the consent of the holder of the account, and shall be
construed as consent with respect hereto, and the same shall apply to any of the
accounts for which I may be a relevant principal.

Dated:_ _ _ _ _ _        Signature:_____

Printed Name:_ _ _ _ _ _ _ _ _ _ _ _